**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 53034**

| | |
|---|---|
| SHANE ROY NEEDHAM, | ) |
| | ) |
| Petitioner-Appellant, | ) Lewiston, April 2026 Term |
| | ) |
| v. | ) Opinion Filed: July 8, 2026 |
| | ) |
| JANET LEA NEEDHAM, | ) Melanie Gagnepain, Clerk |
| | ) |
| Respondent-Respondent on Appeal. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Jay P. Gaskill, District Judge. Megan Marshall, Magistrate Judge.

The district court's decision affirming judgment is <u>reversed</u>, the district court's decision awarding attorney fees is <u>reversed</u>, and the case is <u>remanded</u> to the district court with instructions to remand to the magistrate court.

Arkoosh Law Offices, Boise, for Appellant. Kraig Smikel, argued.

Ludwig, Shoufler, Miller, Johnson, Boise, for Respondent. Scot M. Ludwig, argued.

_____

BRODY, Justice.

In this divorce appeal, the question presented is whether the district court erred in affirming the order of the magistrate court awarding Janet Lea Needham shares in the closely held corporation co-founded by her husband, Shane Roy Needham, in lieu of a monetary award reflecting the value of her community interest in those shares. For the reasons that follow, we conclude that the magistrate court abused its discretion in fashioning its in-kind award of shares to Ms. Needham. As a result, the district court's affirmance of that decision was error. We therefore reverse the district court's affirmance of the magistrate court's disposition, reverse the district court's award of attorney fees, and remand to the district court with instructions to remand to the magistrate court for further proceedings consistent with this opinion.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Shane and Janet Needham married in August 1991. Ms. Needham earned a degree from Washington State University in 1993. During the marriage, she was a homemaker and cared for

1

the couple's four children, who are all now adults. Mr. Needham earned a doctorate in chemistry and went on to found, along with Robin Woods and Michael Pearson, Alturas Analytics, Inc. ("Alturas") in 2000. Alturas operates as a contract research organization, providing outsourced research services to pharmaceutical and biotechnology companies developing new drugs. Mr. Needham holds 70,000 shares—representing 50% of the company's equity—while Mr. Pearson and Ms. Woods each hold 35,000 shares, or 25% apiece. Mr. Needham, Ms. Woods, and Mr. Pearson all serve as directors of the corporation. Ms. Woods also serves as president.

In April 2005, the three shareholders and the corporation executed a Buy-Sell Agreement ("BSA"), which governs the transferability of Alturas shares. The BSA provides, in relevant part, that Alturas must purchase any shares that a shareholder seeks to transfer—whether voluntarily or compulsorily:

> 2. <u>Right to Purchase.</u>
>
> (a) If the holder of any shares which are subject to this Agreement desires to sell, assign or transfer any of the shares of the Corporation, such Shareholder shall give notice in writing to the Secretary of the Corporation, with copies to each individual Shareholder, setting forth the number of shares the Shareholder desires to sell, assign or transfer. The Corporation shall have the right and obligation to purchase the shares proposed to be sold, assigned or transferred.
>
> (b) This right and obligation to purchase shall also apply to any involuntary sale, transfer by operation of law, court decree or foreclosure of a security interest.

The BSA further provides that the purchase price for any shares transferred pursuant to its terms is their book value. Ms. Needham accepted the terms of the BSA: "I, Janet Needham, wife of Shane Needham acknowledge and agree that sufficient consideration exists based upon my community property interest in any agreement Shane Needham has with Alturas and I agree to be bound by the terms and conditions of this agreement." Her signature appears on the document and was acknowledged by a Notary Public.

In addition to being a co-founder, Mr. Needham served as Alturas's chief scientist until his termination in 2020 amidst allegations of misconduct that included performing research without Alturas's approval and refusing to remove Alturas's name from that research. Following his termination, Mr. Needham founded a new company, Veloxity, which appears to compete with Alturas. He then brought an unsuccessful lawsuit against Mr. Pearson and Ms. Woods seeking control of Alturas by contending that he was the sole director. Since then, by the magistrate court's telling, "Alturas has been at a deadlock on nearly every decision."

Mr. Needham filed for divorce in 2018, and in 2021, the parties stipulated to the entry of a divorce decree dissolving the marriage, which the magistrate court entered with an effective date of January 25, 2021. However, the magistrate court reserved jurisdiction over the disposition of the community Alturas shares for determination at a later date.

In May 2023, Ms. Needham filed a motion seeking an order from the magistrate court awarding her one-half of the community Alturas shares and compelling Mr. Needham to execute a Waiver and Consent to Transfer Agreement. Ms. Needham claimed the Waiver would exempt the transfer of 35,000 shares of Alturas stock from Mr. Needham to her from the terms of the BSA (the "BSA Waiver"). The BSA Waiver Ms. Needham submitted to the magistrate court required the signature of Alturas's president and all three shareholders and was unsigned at that time. The magistrate court declined to rule on Ms. Needham's motion, reserving disposition of the shares for trial.

In late March 2024, about three weeks prior to trial, during a meeting of the Alturas board of directors, Mr. Pearson and Ms. Woods assented to the BSA Waiver. Mr. Needham did not. The magistrate court held a two-day trial in April 2024 to adjudicate the disposition of the Alturas shares. At trial, Mr. Needham's expert estimated the fair market value of the shares to be $16,320,000 as of June 30, 2023, while the book value on that same date would be $10,250,000. From the entry of the divorce decree to the time of trial, Mr. Needham's shares yielded $6,140,346 in dividends, half of which he remitted to Ms. Needham in accordance with the terms of the stipulated divorce decree.

In the magistrate court, "[n]either party request[ed] an unequal division of property, but they wish[ed] for the interest to be divided differently." Specifically, Ms. Needham asked the magistrate court to divide the shares equally in-kind, allowing her to become an Alturas shareholder. In the alternative, Ms. Needham proposed that Mr. Needham hold the shares in trust for her benefit. Mr. Needham, by contrast, asked the magistrate court to fashion a monetary award for Ms. Needham reflecting the value of her community interest in the Alturas shares and to allow him to satisfy the award in installments over the course of four to nine years.

Considering both Idaho Code section 32-712(1)(b) and "the need to disentangle the parties," the magistrate court concluded that "dividing the shares equally and awarding each party their respective one-half interest, or 35,000 shares, with each named as a shareholder is the most equitable and appropriate disposition of the community property." The magistrate court noted that

this arrangement would "give each spouse sole and immediate control of their respective share" of the community shares, allowing Ms. Needham to personally control her interest in Alturas and ensure that it continues to provide her with dividends. It also found that, "[d]ue to Mr. Needham's lawsuit against the other shareholders, Alturas has been at a deadlock on nearly every decision" and that awarding Ms. Needham an ownership interest in the company (with attendant voting rights) would break this "deadlock" and "effectuate moving the company forward." Put differently, the magistrate court concluded that Alturas "would be more successful without Mr. Needham" as a controlling shareholder, which justified awarding the shares to Ms. Needham rather than issuing the monetary award Mr. Needham proposed.

Additionally, the magistrate court observed that the Alturas shares had "increased significantly in value, nearly doubled, since the [divorce] [d]ecree was entered." Consequently, in its view, "valuing the shares as of the entry of [d]ecree does not provide a substantially equal division of the parties' community interest as it would allow Mr. Needham to receive the benefit of natural enhancement that Ms. Needham would not receive." Instead, the magistrate court declined to value the Alturas shares and simply divided them evenly between Mr. Needham and Ms. Needham, deeming that "the most fair and equitable resolution" in lieu of conferring a windfall on Mr. Needham. It entered judgment awarding Ms. Needham 50% of Mr. Needham's interest in Alturas, or 35,000 shares, and it ordered Mr. Needham to execute the BSA Waiver to effectuate the division.

Mr. Needham appealed to the district court. On appeal, he argued that the magistrate court abused its discretion by declining to determine the fair market value of Ms. Needham's "interest in the Alturas shares as of the date of divorce" and by refusing to allow him to "buy [Ms. Needham] out over a period of four-to-nine years" based on that valuation. In Mr. Needham's view, the division of the Alturas shares was unequal, diminished the value of his stake in the company by stripping him of voting power, jeopardized his seat on the board, and was inconsistent with "Idaho precedent in community property cases requiring the trial [c]ourt to maintain the value of both parties' interest in community property." He also asserted that the magistrate court's ruling left him "entangled" with Ms. Needham.

The district court rejected these arguments and affirmed the magistrate court's disposition of the Alturas shares. Relying on *Josephson v. Josephson*, 115 Idaho 1142, 1149, 772 P.2d 1236, 1243 (Ct. App. 1989), and *Lamm v. Preston*, 171 Idaho 488, 522 P.3d 1246 (2023), the district

4

court reasoned that a "simple division" of stock in a closely held corporation can be appropriate in situations where the business depends on one spouse's ongoing involvement; where awarding that spouse majority control is required; and where the other spouse, as a minority shareholder, would have virtually no influence and the shares would have little or no marketable value. Finding none of those circumstances present here, the district court concluded that "there is nothing in either case that states stock in a closely held corporation can never be divided." In short, the district court was satisfied that the magistrate court's in-kind award of shares to Ms. Needham was consistent with applicable Idaho caselaw.

The district court further noted that the magistrate court's division of the Alturas shares was informed by

> the factors set forth in Idaho Code [section] 32-712, including the parties' decades long marriage, the parties' respective incomes, the fact [that Ms. Needham] has not been employed for a number of years because of her role as a stay at home mom, the lack of spousal maintenance awarded to [Ms. Needham], and the parties' overall needs and history of using the Alturas dividends to fund their family and lifestyle[.]

The district court was also unpersuaded by Mr. Needham's contention that dividing the Alturas shares would impair their value. Much like the magistrate court, it concluded that "[t]he value of [Mr. Needham's] shares does not change simply because half of those shares are transferred into [Ms. Needham's] name. Instead, by dividing the shares each party is tasked with managing their own shares to maximize the value of those shares and Alturas as a whole." Agreeing with the magistrate court's finding that Alturas was "hopelessly deadlocked at the shareholder level," the district court viewed the in-kind division of shares as an effective means to break the deadlock and, in turn, maximize both parties' interest in Alturas.

Finally, the district court rejected Mr. Needham's argument that the magistrate court lacked authority to compel him to sign the BSA Waiver necessary to effectuate the transfer of Ms. Needham's share of the Alturas stock without triggering the BSA. Citing the principle that, "[t]he divorce court's plenary and equitable power include[s] the authority 'to order the parties to execute various documents of significance such as deeds, assignment[s] of interest in stocks and bonds, insurance policies, bills of sale, and numerous other documents during the divorce process,'" the district court concluded that the BSA Waiver was precisely such a document. (Quoting *Rohr v. Rohr*, 118 Idaho 689, 697, 800 P.2d 85, 93 (1990)). It further determined that the BSA Waiver did not "amend or alter" the BSA but merely ensured that the community property could be divided without forcing a repurchase of Ms. Needham's shares at book value rather than fair market value.

5

Based on this analysis, the district court concluded that the magistrate court did not abuse its discretion and affirmed its disposition of the Needhams' Alturas shares. It also awarded attorney fees against Mr. Needham, deeming his appeal of the magistrate court's order "frivolous, unreasonable, and without foundation." Mr. Needham timely appealed to this Court.

## II. STANDARDS OF REVIEW

When this Court reviews a district court's decision issued in its capacity as an intermediate appellate court, we are "procedurally bound to affirm or reverse the decisions of the district court." *Van Orden v. Van Orden*, 170 Idaho 597, 606, 515 P.3d 233, 242 (2022) (citation omitted). On this posture, we apply a deferential standard of review to the magistrate's factfinding but freely review questions of law:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Robirds v. Robirds*, 169 Idaho 596, 603–04, 499 P.3d 431, 438–39 (2021) (citation omitted). "Conversely, if the district court affirmed the magistrate court's decision but the magistrate court's findings of fact and conclusions of law are not (1) supported by the evidence in the record and (2) consistent with the law, this Court must reverse the district court." *Van Orden*, 170 Idaho at 606, 515 P.3d at 242 (citation modified).

We review a district court's decision to award attorney fees for an abuse of discretion. *Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015)).

## III. ANALYSIS

### A. The district court erred in affirming the magistrate court's order awarding Ms. Needham one-half of the community Alturas shares and compelling Mr. Needham to execute the BSA Waiver.

This appeal asks whether the magistrate court abused its discretion. Our inquiry is guided by four questions: "Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

6

Unlike the district court, we are not persuaded that the magistrate court properly exercised its discretion in making an in-kind award of Alturas shares to Ms. Needham.

The magistrate court's stated purpose of breaking a supposed "deadlock" among the Alturas shareholders is not a proper justification for awarding shares in kind; it falls well outside the scope of an equitable distribution proceeding. We find a similar abuse of discretion in the magistrate court's order compelling Mr. Needham to execute the BSA Waiver. Doing so carries implications not only for Mr. Needham as an Alturas shareholder but also for the fiduciary duties Mr. Needham owes to Alturas as a director—considerations the magistrate court did not address.

For these reasons, we conclude that the magistrate court's order awarding shares in kind and compelling Mr. Needham to execute the BSA Waiver was inconsistent with applicable legal standards and that the magistrate court did not reach the disposition it selected through an exercise of reason. Thus, the district court's affirmance was error. We also take this opportunity to make clear that, on remand, should the magistrate court determine that a monetary award—whether that proposed by Mr. Needham or a modified version the magistrate court deems appropriate—is the proper means of distribution, the correct date on which to value the Alturas shares is the date the Needhams' marriage was dissolved: January 25, 2021.

1. *The magistrate court failed to determine whether execution of the BSA Waiver required Mr. Needham to act in his corporate-fiduciary role.*

Mr. Needham challenges the magistrate court's in-kind award of Alturas shares to Ms. Needham on multiple grounds. He first argues that the order compelling him to execute the BSA Waiver was ultra vires. We are persuaded that the magistrate court's decision was inconsistent with legal standards to the extent it failed to consider whether ordering Mr. Needham to execute the BSA Waiver would require him to act in both a personal capacity—as an Alturas shareholder—and in a fiduciary capacity—as a director. The latter consideration is important because in this divorce proceeding, the magistrate court lacked any authority to order Mr. Needham to take actions in his corporate-fiduciary role.

In addition to terminating the marital relationship, dissolving a marriage requires Idaho courts to take on the additional task of "mak[ing] an equitable distribution of the parties' community property in order to disentangle the parties' legal affairs." *Chavez v. Barrus*, 146 Idaho 212, 220, 192 P.3d 1036, 1044 (2008); *see also* I.C. § 32-906 (defining "community property" as "property acquired after marriage"). The aim of an equitable distribution is twofold. First, it should provide for the "substantially equal division in value" of the parties' community property. I.C. §

7

32-712(1)(a). Second, it should "undo the bonds of the divorcing parties' community property relationships in order to permit the divorcees to go on with their lives independent of one another." *Chavez*, 146 Idaho at 220, 192 P.3d at 1044. Achieving these objectives requires the court to consider "the needs of each spouse and the conditions of the parties." *See Lamm v. Preston*, 171 Idaho 488, 498, 522 P.3d 1246, 1256 (2023). The distribution of community property is a function of equity, and reaching "the most equitable manner" of distribution, *Hunt v. Hunt*, 137 Idaho 18, 20, 43 P.3d 777, 779 (2002) (citation omitted), "is a matter within the sound discretion" of the magistrate court. *Shepard v. Shepard*, 94 Idaho 734, 735, 497 P.2d 321, 322 (1972) (citations omitted).

Once the magistrate court settles on the "manner" of distribution, it possesses broad equitable powers to compel the parties to comply with its terms. Idaho's appellate courts have held, for example, that a magistrate court may order an ex-spouse to execute a waiver of the right to claim a federal tax exemption, *Rohr v. Rohr*, 118 Idaho 689, 697, 800 P.2d 85, 93 (1990), or to execute a noncompetition agreement to protect the value of goodwill in a community-property business. *Carr v. Carr*, 108 Idaho 684, 689, 701 P.2d 304, 309 (Ct. App. 1985).

Read closely, however, *Rohr* and *Carr* imply a limiting principle informing a magistrate court's exercise of discretion to equitably distribute community property. In *Rohr* and *Carr*, the magistrate court's order affected the parties in their individual capacities—as individual taxpayers in one case and as a sole proprietor in the other. *See Rohr*, 118 Idaho at 690–91, 800 P.2d at 86–87; *Carr*, 108 Idaho at 687–88, 701 P.2d at 307–08. Here, by contrast, the BSA Waiver modifies an agreement between the shareholders and the corporation. Under the BSA, it is *Alturas's* "right and obligation" alone to redeem shares proposed for transfer—which explains why Alturas's president, along with each of the three shareholders, was a party to the BSA.

Waiving this redemption right, then, is not simply a matter of each shareholder forfeiting an individual right. Rather, executing the BSA Waiver will cause Alturas itself to lose a contractual right of considerable import. The record suggests two possibilities as to what is required of the Alturas shareholders and directors to forfeit this right on the corporation's behalf. In the first, following Mr. Needham's argument, the BSA Waiver requires the unanimous consent of the directors. Thus, Mr. Needham's assent to the BSA Waiver is required in two capacities—as a shareholder waiving his own rights *and* as a corporate director waiving Alturas's rights. In this scenario, when Mr. Needham is acting in his corporate director capacity, he—like Mr. Pearson

8

and Ms. Woods—must evaluate the BSA Waiver in light of the duties he owes to Alturas as a director to act "[i]n good faith" and "in the best interests of the corporation." I.C. § 30-29-830(a)(1)–(2); *see McCann v. McCann*, 152 Idaho 809, 815, 275 P.3d 824, 830 (2012) ("[I]n a closely-held corporation, the corporate directors owe a fiduciary duty to one another, to the corporation and to the shareholders . . . ."). As a corporate fiduciary, Mr. Needham cannot cause the corporation to waive a legal right simply because doing so would benefit his personal interests in these divorce proceedings.

To be sure, the magistrate court considered the personal implications for Mr. Needham of the BSA Waiver and the in-kind award of shares to Ms. Needham, in light of the dual aims of equitable distribution—"substantially equal division" and disentanglement. But it did not consider whether compelling Mr. Needham to execute the BSA Waiver in his capacity as a corporate fiduciary comported with the duties of care and loyalty he owes Alturas and its shareholders. Put differently, the magistrate court neither took evidence on, nor evaluated, whether the BSA Waiver represented a sound business decision. Nor should it have. Alturas is not a party to the Needhams' divorce, even if fifty percent of its shares are at issue in the equitable distribution proceeding as the parties' community property. While the magistrate court may certainly order Mr. Needham to take action with respect to those shares, it cannot compel him to act in his capacity as a corporate fiduciary, just as it could not compel the corporation itself to act in any particular way.

In the second possible scenario, Mr. Needham's assent to the BSA Waiver as a director is unnecessary because, as Ms. Needham contends, the assent of Mr. Pearson and Ms. Woods—constituting a majority of the board—is sufficient to give it legal force. Alturas's Restated and Amended Corporate Bylaws provide that "the act of the majority of Directors present at a meeting at which a quorum is present shall be the act of the Board." By extension, authorizing Alturas's president to execute the BSA Waiver would require only the assent of a simple majority of the three directors. If that is the case, Alturas has already consented to the BSA Waiver, and Mr. Needham's dissent is irrelevant to this equitable distribution proceeding—because the only remaining question is his assent in his *personal* capacity as an Alturas shareholder.

Unfortunately, we are unable to determine which of these two scenarios applies. At oral argument, Mr. Needham suggested that Alturas's "operating agreement" requires unanimous director approval, yet the corporate bylaws appear to require only a majority—two of three directors. Ms. Needham, for her part, appeared to take the position that only two directors' assent

9

was required. Critically, the magistrate court made no finding as to whether Alturas had assented to the BSA Waiver. And the record before this Court contains only what appears to be an unexecuted draft of the BSA Waiver. These conflicting accounts present a factual question that is not fit for resolution by this Court in the first instance. *See Akers v. D.L. White Constr., Inc.*, 156 Idaho 37, 43–44, 320 P.3d 428, 434–35 (2013) (citation omitted). We therefore leave these issues for resolution by the magistrate court on remand consistent with our holdings herein.

In the event the magistrate court determines that Mr. Needham's assent as a director is necessary, and extrapolating on the principles of law announced in *Rohr* and *Carr*, we hold that a magistrate court abuses its discretion when it compels a party to a divorce to take action in their capacity as a corporate fiduciary in order to facilitate the disposition of community property. A fiduciary, by definition, acts in a position of trust over property that is not entirely their own, *see fiduciary*, *Black's Law Dictionary* (12th ed. 2024), and that property is not subject to the equitable distribution proceeding. Here, Alturas was not before the court, even if fifty percent of the corporation's shares were the subject of the equitable distribution. Accordingly, the magistrate court cannot compel Alturas, or its fiduciaries, to act in furtherance of one shareholder's divorce. The magistrate court's jurisdiction extended to the Needhams' shares of Alturas—and while it could order Mr. Needham to take specific action with respect to those shares in his individual shareholder capacity, it could not compel him to execute a document in his corporate director capacity to forfeit a right possessed by Alturas alone.

Because neither the magistrate court's decision nor the record clarified what corporate action is required to give the BSA Waiver legal force, we reverse the district court's decision and remand with instructions to remand to the magistrate court to determine whether Alturas has already effectively consented to the BSA Waiver by virtue of the assent of Mr. Pearson and Ms. Woods. If so, the magistrate court's order compelling Mr. Needham to execute the BSA Waiver implicates only his personal ownership interest in Alturas. If, however, Alturas's assent requires unanimous director approval, the magistrate court lacks authority to compel Mr. Needham to provide that consent in his capacity as a corporate fiduciary. In this equitable distribution proceeding, it is the Needhams' ownership interest in Alturas—not Alturas itself—that is before the court.

> 2. *The magistrate court improperly considered whether an in-kind division of shares would advance the interests of Alturas and its decision was based on the improper assumption that both parties would vote on future corporate distributions.*

We find additional error in the magistrate court's choice of disposition. The magistrate court's error on this score implicates the fourth prong of the "multi-tiered" abuse-of-discretion inquiry, which considers whether the magistrate court "reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). The object of our analysis is "the process the [magistrate] court engaged in to make its decision." *Palmer v. Spain*, 138 Idaho 798, 801–02, 69 P.3d 1059, 1062–63 (2003). Where this process results in a discretionary decision that is arbitrary—that is, one no reasonable jurist could adopt—the trial court has abused its discretion. *See State v. Le Veque*, 164 Idaho 110, 115, 426 P.3d 461, 466 (2018) (citation omitted).

We have applied this standard to find a trial court order lacking a reasoned basis where, for example, a district court relinquished jurisdiction over a criminal defendant based on the defendant's failure to follow "an ambiguous recommendation—rather than a specific and definite order." *Id.* at 117, 426 P.3d at 468. In another case, we held that a magistrate court failed to exercise reason in fashioning a custody arrangement requiring the parents to travel 913 miles every three weeks to exchange custody without considering the impact of that arrangement on the child. *Martinez (Portillo) v. Carrasco (Mendoza)*, 162 Idaho 336, 343–45, 396 P.3d 1218, 1225–27 (2017). In the present case, we conclude that the magistrate court's rationale for effectuating equitable distribution through an in-kind award of Alturas shares to Ms. Needham is similarly arbitrary and unreasonable.

As discussed, the magistrate court exercises broad authority to fashion an equitable distribution scheme that accomplishes the "substantially equal" division of property and the disentanglement of the parties' legal and financial affairs. In exercising that authority, the court must consider, "the facts of the case and the condition of the parties," through the lens of the factors enumerated by Idaho Code section 32-712(1)(b).

In *Josephson v. Josephson*, the Idaho Court of Appeals addressed how these considerations apply to the equitable distribution of community shares in a closely held corporation—the same issue presented here. 115 Idaho 1142, 1149, 772 P.2d 1236, 1243 (Ct. App. 1989), *abrogated on other grounds by*, *Bell v. Bell*, 122 Idaho 520, 835 P.2d 1331 (Ct. App. 1992). There, the Court of Appeals considered the marketability of the shares, their ability to yield dividends, whether an award would confer a minority or majority interest, the degree of each spouse's involvement in the business, and the non-involved spouse's desire to participate in the enterprise. *Id.* Weighing

11

these factors, the Court of Appeals held that the magistrate court erred in awarding the non-involved spouse shares in the closely held corporation rather than a monetary award reflecting the value of her interest. *Id.* at 1150, 772 P.2d at 1244. In doing so, the court relied largely on the fact that the shares were unlikely to produce tangible value for the non-involved spouse given the absence of a public market and the unlikelihood of dividends. *See id.* at 1150–51, 772 P.2d at 1244–45.

Recently, in *Lamm v. Preston*, this Court expressly endorsed the Court of Appeals' reasoning in *Josephson*. 171 Idaho 488, 498, 522 P.3d 1246, 1256 (2023). In *Lamm*, an ex-spouse challenged the magistrate court's monetary award reflecting the value of her community interest in the business founded by the other spouse. *Id.* at 497, 522 P.3d at 1255. The magistrate court made similar considerations to the *Josephson* court, noting that the founding spouse remained involved in the business, that an in-kind award would leave the non-involved spouse with only a minority interest, and that the shares neither produced dividends nor were readily marketable. *Id.* at 498, 522 P.3d at 1256. We concluded that the magistrate court's decision to award money rather than shares was "in line with *Josephson*" and therefore declined to find an abuse of discretion. *Id.*

Here, the magistrate court relied heavily on the reasoning of *Lamm*, *Josephson*, and the factors enumerated in Idaho Code section 32-712(1)(b). It considered the length of the Needhams' marriage, the parties' respective educations and occupations, their incomes since the divorce, their health, and their future earning potential. It also observed that, "[a]side from Alturas being a closely held corporation with no public market, the facts here differ significantly from those in *Josephson* and *Lamm*." We specify, however, that this case also involves a buy-sell agreement, a contractual restriction not present in either *Lamm* or *Josephson*.

The magistrate court went on to note that an in-kind award would result in Ms. Needham holding an equal ownership stake alongside the other shareholders. In its view, such an award would give "each spouse sole and immediate control of their respective share[s] to do as they see fit." The magistrate court rejected Mr. Needham's alternative proposal to remit to Ms. Needham seventy-five percent of his after-tax dividends from the Alturas shares over four to nine years. In its view, that proposal risked continued entanglement and did not provide a reliable source of income. The court reasoned that Alturas's future distributions were uncertain and that, if Mr. Needham's other ventures proved unsuccessful, if litigation arose, or if his relationships with the

other shareholders further deteriorated, he might seek bankruptcy protection, thereby jeopardizing payments to Ms. Needham.

These considerations are largely consistent with those this Court approved in *Lamm*. Had the magistrate court ended its analysis there, our conclusion might be different. But the court went further, assessing the internal dynamics of Alturas and the business judgment of its directors and shareholders:

> Aside from Alturas being a closely held corporation with no public market, the facts here differ significantly from those in *Josephson* and *Lamm*. To begin, unlike the husband[s] in *Josephson* and *Lamm*, Mr. Needham is no longer employed by Alturas. He still remains a director and shareholder, but his integral involvement in the daily operations as chief scientist no longer exist. The success of the business does not depend on him and arguably, at least according to the other shareholders, it would be more successful without Mr. Needham given the current deadlock and inability to move the company forward. Due to Mr. Needham's lawsuit against the other shareholders, Alturas has been at deadlock on nearly every decision. Efforts to move the company forward are difficult and director voting on issues appears nearly always to be 2:1; Mike Pearson and Robin Woods versus Shane Needham. Thus, while the Needhams own 50% of the shares at this time, little of the company's business is accomplished because as Mr. Needham's expert testified, while Mr. Needham is the named majority shareholder "he effectively has no control." What should amount to majority control of Alturas has been diminished by Mr. Needham. Providing each party control over their one-half interest would not only equally divide the parties' community interest, but would also effectuate moving the company forward.

The magistrate court also repeatedly observed throughout its decision that an in-kind award would give both parties "a voice and ability to vote for dividend distributions in the future." That reasoning does not reflect the law, which gives the Alturas *board of directors* the authority to authorize distributions to its shareholders. I.C. § 30-29-640(a) ("A board of directors may authorize and the corporation may make distributions to its shareholders . . . ."). Alturas has three directors—Mr. Needham, Ms. Woods, and Mr. Pearson. Much of the trial was spent eliciting testimony from Ms. Woods and Mr. Pearson regarding their motives and whether they would use the transfer of shares to Ms. Needham as an opportunity to oust Mr. Needham from the board of directors and install Ms. Needham as a director. The magistrate court ultimately concluded that Mr. Needham's concern of ouster was well-founded, but ultimately something out of its control. What the magistrate court's reasoning neglected to consider is that the Needham who holds the board seat will effectively control decisions regarding distributions to the other. They will not each have a "voice" or a "vote" over distributions. Only one of them will have that power.

13

We conclude that the magistrate court's consideration of the internal dynamics of Alturas's corporate governance was an improper basis for the in-kind award. The magistrate court erred by effectively taking sides in a dispute between Mr. Needham and the other shareholders and failing to consider that only the Needham who sits on the board of directors will vote on distributions. Its conclusion that Alturas would be more successful if Mr. Needham's ownership interest were diluted is not relevant to whether the chosen distribution method achieves a substantially equal division of community property and disentangles the divorcing parties' affairs. Nor is it apparent how "moving the company forward"—whatever that phrase may entail—is relevant to these objectives.

It is not the role of a court in an equitable distribution proceeding to assess the business acumen of a closely held corporation's leadership merely because some of its shares happen to be community property. Instead, *Josephson*, *Lamm*, and Idaho Code section 32-712 make clear that the court's analysis must remain focused on "the facts of the case and the condition of the parties." I.C. § 32-712(1); *Josephson*, 115 Idaho at 1149, 772 P.2d at 1243; *Lamm*, 171 Idaho at 498, 522 P.3d at 1256. Alturas, Mr. Pearson, and Ms. Woods are not parties to this action. In this equitable distribution proceeding, the focus must remain on Mr. and Ms. Needham and how to best divide their community shares in Alturas.

To be clear, we recognize a magistrate court's "broad discretion to equitably divide the community property." *Shill v. Shill*, 115 Idaho 115, 118, 765 P.2d 140, 143 (1988). Even so, in this case the magistrate court appeared to consider itself bound to either accept or reject Mr. Needham's proposed plan in full for compensating Ms. Needham for her interest in the community Alturas shares. That was a mistake. The magistrate court raised legitimate concerns about the feasibility of Mr. Needham's proposed payment plan. But those concerns did not foreclose the possibility of crafting an alternative plan. Instead, the magistrate court could revise the terms of Mr. Needham's proposal or even craft a new plan that accounted for Ms. Needham's needs and provided her with greater certainty.

For example, the magistrate court could have required a more thorough examination of Mr. Needham's income sources and assets to determine his ability to complete the plan on an accelerated schedule. Or it could have granted Ms. Needham a security interest in Mr. Needham's assets until he satisfies the payment schedule. Although the possibilities appear to be numerous, *see Josephson*, 115 Idaho at 1150–51, 772 P.2d at 1244–45, it is not the province of an appellate

14

court to speculate on these matters and fashion an equitable disposition of the assets. On remand, if the magistrate court determines that a payment plan is the more appropriate means of equitable distribution, it should exercise its broad discretion to craft a plan that accounts for the particular circumstances of this case.

In sum, we conclude that the magistrate court's apparent aim to diminish Mr. Needham's influence in order to "move the company forward" is an improper basis for awarding Alturas shares in kind to Ms. Needham. That rationale is inconsistent with the purposes of equitable distribution. It was also premised on the improper assumption that each of the Needhams would be entitled to vote on future distributions. Accordingly, we hold that the district court erred in affirming the magistrate court's disposition of the Needhams' community interest in Alturas.

**B. The district court erred in affirming the magistrate court's conclusion that it had discretion to determine the date of valuation for the Needhams' Alturas shares.**

Mr. Needham next challenges the magistrate court's valuation of the Needhams' community interest in their Alturas shares. The magistrate court perceived that it possessed "wide discretion in determining a valuation date for corporate stocks to ensure fairness and equality between the parties." It also expressed concern that valuing the Alturas shares on the date that the Needhams' marriage dissolved would deny to Ms. Needham considerable appreciation of the Alturas shares in the time between dissolution and trial. At the same time, the magistrate court recognized that "[c]ommunity property ends when the marriage ends" and suggested that the appropriate valuation date was January 25, 2021, the date the magistrate court dissolved the Needhams' marriage. Ultimately, the magistrate court declined to determine the value of the Needhams' community interest in Alturas in light of its decision to simply divide the shares in kind.

On appeal, Mr. Needham argues that retaining jurisdiction over the Alturas shares for post-dissolution equitable distribution "does not afford the [m]agistrate [c]ourt unlimited discretion to disregard Idaho precedent in favor of one party over the other. Instead, the [m]agistrate [c]ourt must relate its decision back to the date of divorce." Conversely, Ms. Needham agrees with the magistrate court that it has wide discretion to determine the applicable valuation date but concludes that exercising that discretion was unnecessary here because the magistrate court ultimately awarded an in-kind division.

Because this case is being remanded, we take this opportunity to clarify that the proper date from which to value community property in post-dissolution equitable distribution proceedings is

15

the date the marriage was dissolved. *See N. Idaho Bldg. Contractors Ass'n v. City of Hayden*, 164 Idaho 530, 540, 432 P.3d 976, 986 (2018) (noting that an appellate court "may give guidance for other issues on remand" but only "on issues that are absolutely necessary" and "that have a practical effect on *this* appeal" (citations omitted)). Here, that date is January 25, 2021. Should the magistrate court determine on remand that a monetary award is the more appropriate means of compensating Ms. Needham for her interest in the community Alturas shares, it must value those shares as of January 25, 2021, the date the Needhams' marriage was dissolved.

As discussed, Idaho Code section 32-712 provides that a central aim of equitable distribution is to achieve "a substantially equal division in value" of the community estate. To accomplish that goal, a magistrate court must determine the value of the various assets that comprise the community property. And the date to which the magistrate court fixes an asset's value matters—particularly when the asset is volatile or when a business is rapidly expanding or contracting.

Mr. Needham relies on *Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 21 P.3d 918 (2001), to support his contention that the Alturas shares should have been valued as of the date the Needhams' divorce decree issued, notwithstanding the magistrate court's retention of jurisdiction to equitably distribute those shares at a later time. Conversely, Ms. Needham relies on *Wagner v. Wagner*, 160 Idaho 294, 371 P.3d 807 (2016), and *Reed v. Reed*, 157 Idaho 705, 339 P.3d 1109 (2014), cases also cited by the magistrate court, to support her contention that the magistrate court had "wide discretion in the selection of the date for valuation purposes of shares of stock." Considering this Court's caselaw and the statutory definition of community property in Idaho Code section 32-906(1), we conclude that Mr. Needham's position is the correct one. Here, the magistrate court misperceived the valuation date as one committed to discretion.

In *Reed*, this Court held that, "[i]n a divorce action, the community property assets are to be valued as of the date of the divorce trial." 157 Idaho at 711, 339 P.3d at 1115. This Court also acknowledged in a footnote that this rule is not without exceptions:

> There are exceptions to this rule. The parties may stipulate to an earlier valuation date, *Sword v. Sweet*, 140 Idaho 242, 253, 92 P.3d 492, 503 (2004); the valuation date will be before the trial if the trial court enters a partial final judgment terminating the marriage in order to expedite the later resolution of the property distribution issues, [*Brinkmeyer*, 135 Idaho at 599–600, 21 P.3d at 921–22]; and the trial court may retain jurisdiction to value retirement benefits after the actual date of divorce, *Hunt v. Hunt*, 137 Idaho 18, 21, 43 P.3d 777, 780 (2002).

16

*Id.* at 711 n.6, 339 P.3d at 1115 n.6. *Brinkmeyer* illustrates one such exception. There, the magistrate court entered a partial divorce decree dissolving the marriage but reserved disposition of the community property for a later hearing. 135 Idaho at 598, 21 P.3d at 920. Rejecting the argument on appeal that the magistrate court erred by valuing the community assets as of the date of the partial decree, this Court held that, "once the magistrate issued the divorce and certified it as final it necessarily follows that the date of valuation should occur on that date" because "community property only exists as long as the community exists." *Id.* at 600, 21 P.3d at 922 (citing I.C. § 32-601).

This case is no different than *Brinkmeyer*. The magistrate court essentially entered a partial divorce decree—though it referred to the decree as an "Entry of Judgment" and "Decree of Divorce"—dissolving the Needhams' marriage. It retained jurisdiction over the disposition of the community property—the Alturas shares—for resolution at a later date. Because the marriage was dissolved before equitable distribution proceedings, it was not appropriate for the magistrate court to treat any date other than the date of the partial divorce decree as the operative point for valuation. Consistent with *Brinkmeyer*, any valuation conducted on remand must reflect the value of the shares as of January 25, 2021, the date the Needhams' marriage was dissolved by the partial divorce decree. *See id.* (citing I.C. § 32-601).

This conclusion is bolstered by section 32-906(1), which defines community property by reference to both the time of acquisition and the nature of the asset. Separate property includes property acquired before marriage, as well as property acquired after marriage "by gift, bequest, devise or descent" or with the proceeds of separate property. I.C. § 32-903. Relying on that definition, section 32-906 provides that community property encompasses "[a]ll other property acquired after marriage by either husband or wife." I.C. § 32-906(1). The implication of the definitions provided by sections 32-903 and 32-906 is that "community property only exists as long as the community exists." *Brinkmeyer*, 135 Idaho at 600, 21 P.3d at 922. Once a marriage is dissolved by a divorce decree, there is no longer any community property. *Id.* And even when, as here, a court retains jurisdiction to resolve the disposition of community assets after dissolution, its decision must relate back to the date of the decree—the last moment at which the community existed. It follows that any post-dissolution appreciation (or depreciation) of a community asset may not be considered by the trial court. *See Speer v. Quinlan ex rel. Lewis County*, 96 Idaho 119, 127, 525 P.2d 314, 322 (1973) ("[T]he natural enhancement in value of separate property during

coverture does not constitute community property; however, to the extent an enhancement in value is due to community efforts, labor, industry or funds, it falls into the community." (citation omitted)).

In divorce proceedings where dissolution precedes the disposition of community property, the parties are incentivized to game the valuation date to capture post-dissolution appreciation or avoid post-dissolution depreciation. *See Brinkmeyer*, 135 Idaho at 600, 21 P.3d at 922 (observing that "[b]oth parties have attempted to postpone the valuation date until it benefits their interests"). Here, as Mr. Needham aptly notes, Ms. Needham would likely have argued for a valuation as of the divorce date had Alturas experienced a downturn after dissolution. Adhering to a fixed valuation date—the date of dissolution—makes practical and doctrinal sense when a partial divorce decree issues before the division of community property, as it prevents precisely this type of gamesmanship.

Ms. Needham attempts to avoid this rule by relying on *Wagner*, 160 Idaho 294, 371 P.3d 807, and the general rule announced in *Reed*, 157 Idaho at 711, 339 P.3d at 1115, that "the community property assets are to be valued as of the date of the divorce trial." But *Wagner* involved a district court's valuation of a closely held corporation in the context of corporate dissolution proceedings. 160 Idaho at 296–97, 371 P.3d at 809–10. And Ms. Needham simply ignores the footnote in *Reed* that expressly provides exceptions to its general rule, including when the equitable distribution of community property occurs *after* the marriage has been dissolved, as happened here. *See* 157 Idaho at 711 n.6, 339 P.3d at 1115 n.6.

The magistrate court did not have discretion to select a valuation date beyond the existence of the Needhams' community—even for the laudable purpose of allowing Ms. Needham to benefit from post-dissolution appreciation. On remand, should the magistrate court determine, in its discretion, that a monetary award is the more appropriate means of disposition, it must determine the value of the Needhams' shares as of January 25, 2021, the date their marriage was dissolved.

**C. The district court abused its discretion by awarding attorney fees against Mr. Needham because his appeal raised legitimate challenges to the magistrate court's exercise of discretion. Neither party is entitled to an award of attorney fees on appeal.**

The district court awarded attorney fees pursuant to Idaho Code section 12-121 against Mr. Needham based on its determination that Mr. Needham "did not present any compelling arguments as to how the magistrate court abused its discretion." We disagree and have reversed the district court's decision. Accordingly, its award of attorney fees under section 12-121 must be reversed.

18

Finally, both parties request an award of attorney fees under Idaho Code section 12-121 on appeal to this Court. Because Mr. Needham is the prevailing party on appeal, we decline to award attorney fees to Ms. Needham. *See* I.C. § 12-121. And because Mr. Needham merely recited the applicable legal standards for such an award without applying those standards to explain why he is entitled to an award of attorney fees, we consider his argument waived and decline to consider it further. *See Teurlings v. Larson*, 156 Idaho 65, 76, 320 P.3d 1224, 1235 (2014) ("[T]his Court will not consider attorney fees if a party fails to argue how the appeal was defended unreasonably.").

## IV.    CONCLUSION

Based on the foregoing reasons and authorities, we reverse the district court's decision affirming the magistrate court's disposition of the Needhams' community shares in Alturas and remand with instructions to the district court to remand to the magistrate court to conduct further proceedings consistent with this opinion. We reverse the district court's award of attorney fees to Ms. Needham. We decline to award attorney fees on appeal to either party. Mr. Needham is entitled to costs as a matter of course. I.A.R. 40(a).

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.